IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTIAN D BORGWALD,

      Petitioner,

v.                              CASE NO. 3:15-cv-63-LC-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and is proceeding pursuant to an amended petition, ECF No. 7.  The petition stems from Petitioner's Escambia County conviction and 25-year sentence for second-degree manslaughter.  *Id*.  Petitioner concedes that the motion is  barred by the one-year limitations period of 28 U.S.C. § 2244(d)(1), but asserts in his original and amended petitions that he is entitled to the benefit of equitable tolling under *Holland v. Florida*, 560 U.S. 631, 645 (2010), because an attorney that he retained to pursue postconviction relief in state court failed to do so and then delayed in returning Petitioner's legal materials to him until after the federal limitations period had expired.  ECF Nos. 1, 7.

Respondent has filed a motion to dismiss the petition as time-barred,

arguing that Petitioner has not met the standard necessary to establish an

entitlement to equitable tolling under controlling authority.  ECF No. 16.

The Court afforded Petitioner an opportunity to submit additional

documents in support of his claim regarding equitable tolling, and he has

now done so.  ECF No. 32, 33.  For the following reasons, the undersigned

respectfully recommends that the motion to dismiss be granted and,

alternatively, that the petition be denied on the merits.[1]

## I.  Background

Petitioner was charged with second degree murder with a firearm.

The state's case against Petitioner stemmed from an incident that occurred

on the night of October 27, 2008, at Richey's Bar in Pensacola, Florida.

The State's theory of the case may be summarized as follows.  Petitioner

was drinking with a friend, and got in a dispute with another bar patron.

Petitioner was hit and knocked out by the other patron, who then stole

Petitioner's money.  When Petitioner regained consciousness, he was

---

[1]Because the Court may resolve the Petition on the basis of the current record, the Court has determined that an evidentiary hearing is not warranted and no further response is necessary.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

extremely irate and threatened to come back to the bar and "shoot the place up." A bartender told Petitioner to leave. Petitioner left the bar, met another friend to retrieve some personal belongings and a gun, and returned to the bar. Petitioner looked around the bar, and then went into the parking lot. Another man, the victim, confronted Petitioner in the parking lot and Petitioner shot him twice, killing him. ECF No. 17-2 at 16-18.

The defense theory was that the victim and the patron who attacked Petitioner threatened to harm Petitioner if he did not buy cocaine from them. To appease them, Petitioner bought what he knew was fake cocaine. The men then confronted Petitioner to rob him, knocking Petitioner out. Petitioner left, retrieved a gun, and also made a report to police about the incident. Petitioner and his friend returned to the bar to collect a set of keys and a phone charger they had left behind. Petitioner waited in the parking lot. His friend emerged with three other men following him, yelling threats. Petitioner pulled out his gun but the men continued to approach. Petitioner shot and killed one of the men. *Id*. at 19-28.

The jury found Petitioner guilty of the lesser-included offense of

manslaughter with a firearm, and he was sentenced to 25 years imprisonment.  Petitioner appealed, arguing that the jury instructions on self-defense were confusing and misleading.  *Id.* at 305.  The First DCA affirmed, *per curiam*, without written opinion on November 2, 2010.  ECF No. 17-3 at 50.

Both Respondent and Petitioner agree that his conviction became final for purposes of beginning the federal habeas limitations period on January 31, 2011.  ECF No. 1 at 44, ECF No. 16 at 9.  Ultimately, the federal limitations period elapsed on January 31, 2012, with no state-court postconviction motion having been filed by the attorney Petitioner retained for postconviction proceedings, Robert Carl Davis.  *See* ECF No. 16 at 10 (motion to dismiss summarizing state-court filings).  In October 2012, Petitioner filed a *pro se* Rule 3.850 motion, which was summarily denied.  *See* ECF No. 17-7 at 123-34.  The First DCA affirmed *per curiam* without opinion on June 20, 2014.  ECF No. 17-8.  Petitioner also filed, in November 2012, a state habeas petition alleging ineffective assistance of appellate counsel.  ECF No. 17-3 at 136-83.  The First DCA denied the petition on the merits on December 14, 2012.  ECF No. 17-5 at 122.

The instant federal habeas corpus petition was filed on February 23,

2015.  ECF No. 1 (original petition).  Petitioner asserts thirteen grounds for

federal habeas relief, primarily concerning claims of ineffective assistance

of trial and appellate counsel.  ECF No. 7 (amended petition).

## II.  Motion to Dismiss and Equitable Tolling

Petitioners whose convictions became final after the effective date of

the AEDPA have a one-year period within which to seek federal habeas

corpus review of their convictions.  The one-year limitations period begins

to run, *inter alia*, from "the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such

review[.]"   The one-year limitations period is statutorily tolled during the

pendency of a properly-filed state application for post conviction relief, and

may be equitably tolled in appropriate "extraordinary circumstances."  28

U.S.C. § 2244(d)(2); *Holland v. Florida*, 560 U.S. 631, 645 (2010).

"Because the time period specified in 28 U.S.C. § 2244 is a statute of

limitations, not a jurisdictional bar, the Supreme Court has held § 2244(d)

does not bar the application of equitable tolling in an appropriate case."

*Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014)

(citing *Holland*, 560 U.S. at 645).  Equitable tolling is an "extraordinary

remedy", "limited to rare and exceptional circumstance and typically

applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009).

The Eleventh Circuit has recently reiterated that to warrant the

extraordinary remedy, a Petitioner must demonstrate "(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance

stood in his way and prevented timely filing." *Cadet v. Fla. Dept. of Corr.*,

853 F.3d 1216, 1218 (11th Cir. 2017) (citing *Holland*, 560 U.S. at 649).

Equitable tolling is assessed on a case-by-case basis, considering

the specific circumstances of the case. *Hutchinson v. Florida*, 677 F.3d

1097, 1098 (11th Cir. 2012); *see Holland*, 560 U.S. at 649–50 (clarifying

that the exercise of a court's equity powers must be made on a

case-by-case basis). The petitioner has the burden of establishing his

entitlement to equitable tolling; his supporting factual allegations must be

specific and not conclusory. *Hutchinson*, 677 F.3d at 1099.

At the time the motion to dismiss was filed, the only document

submitted by Petitioner in support of his claim of entitlement to equitable

tolling was a copy of a Florida Bar complaint against his retained

postconviction counsel, Robert Carl Davis, detailing the events that

allegedly occurred while he was attempting to pursue postconviction relief

in state court. *See* ECF No. 1 at 47-51. The Bar complaint references

attachments, but none were included with the copy of the Bar complaint submitted with the Petition. *Id*.

According to the Bar complaint, Petitioner retained Mr. Davis several months after his conviction was affirmed. Petitioner provided Davis with Petitioner's transcripts and legal materials. Petitioner contends that in June 2011 Davis assured him that a Rule 3.850 postconviction motion would be filed before November 2, 2011, which would have been within the one-year federal limitations period. Petitioner alleges that in subsequent conversations, he was told that the deadline would not be met and also that the deadline did not matter since Davis did not practice federal law. Petitioner's materials were not returned upon his request, so he was unable to work on his own motion. Petitioner's mother, who had paid fees to counsel, made several calls to counsel. Petitioner was told that a packet of information would be received from Davis with a contract and payment schedule, but no such packet was received. In December 2011, Davis and an associate, Adam Tucker, assured Petitioner during a telephone call that three grounds Petitioner had requested would be included in his motion as well as three additional grounds they prepared and possibly a seventh ground. During that conversation, counsel told Petitioner he would receive

a copy of the motion within ten days and then the motion would be filed during the first week of January 2012. Petitioner says that Davis "downplayed" the habeas deadline. No motion was received, and after several further calls, on February 2, 2012, Petitioner was told that he had been sent a copy of a Rule 3.850 motion that consisted of one or two grounds. Petitioner contends that when he questioned the grounds Tucker stated "that is why people like you sit in prison and people like him and his boss get paid to get us out." Petitioner contends in the Bar complaint that the motion was the "worst 3.850 motion I, or many others have ever seen." After additional weeks of calls and letters "seeking answers or an explanation," Tucker left a message on Petitioner's mother's phone stating that Petitioner "is no longer a client of theirs. No explanation, no transcripts or records have been returned!" ECF No. 1 at 50.

Based on Petitioner's representation that there were documents supporting his claim to equitable tolling, the Court afforded him additional time to submit such documents. Petitioner filed additional documents, ECF Nos. 32 and 33. Many of the documents submitted by Petitioner are copies of the state court record that are duplicative of the record submitted by Respondent. Petitioner submitted another copy of his Bar complaint.

ECF No. 32 at 32-36.

Petitioner's exhibit includes what appears to be a portion of Mr. Davis' response to the Bar complaint. The response is in the form of a chronology beginning September 21, 2011, when Davis and his associate, Adam Tucker, called Petitioner's mother to discuss options for a Rule 3.850 motion. The chronology reflects that as of October 19, 2011, no executed contract and fee agreement had been received from Petitioner's mother. On October 24, 2011, Tucker spoke with Petitioner by phone and informed him that the deadline for filing a state Rule 3.850 motion was November 2012, while the federal habeas corpus deadline was in November 2011. Petitioner was advised that Davis would not be representing Petitioner with respect to any federal petition, but only with respect to a state motion that would be filed "by November 2012". Davis had subsequent conversations with Petitioner's mother explaining the difference between state and federal filings. On December 16, 2011, Petitioner asked Davis about the federal statute of limitations and Davis reiterated to Petitioner that he was only representing him with respect to state proceedings. Following subsequent contacts, on February 2, 2012, Tucker had a contentious conversation with Petitioner which concluded

with Petitioner hanging up on Tucker.  ECF No. 32 at 38-42.  Petitioner has

not disputed the accuracy of this chronology.

"The diligence required for equitable tolling purposes is reasonable

diligence, not maximum feasible diligence." *Holland*, 560 U.S. at 653; see

also *Smith v. Comm'r, Ala. Dep't of Corr.*, 703 F.3d 1266, 1271 (11th

Cir.2012) (per curiam) (acknowledging petitioners are not required "to

exhaust every imaginable option, but rather to make reasonable efforts").

For purposes of Petitioner's claim that equitable tolling applies, the Court

will assume that he acted with reasonable diligence in pursuing

postconviction remedies.  The remaining question, then, is whether

Petitioner can establish the "extraordinary circumstances" prong necessary

to invoke equitable tolling.  *Cadet*, 853 F.3d at 1225.

In *Cadet*, the Eleventh Circuit addressed the circumstances under

which an attorney's failure to meet the federal habeas filing deadline

amounts to an extraordinary circumstance meriting equitable tolling.

Analyzing recent Supreme Court authority on the issue, the Eleventh

Circuit concluded that an attorney's negligence, even gross negligence, in

determining the correct federal filing deadline is insufficient; the petitioner

must also show that his attorney abandoned him, or engaged in other

professional misconduct amounting to an "extraordinary circumstance."  *Id*.

at 1228 (citing *Maples v. Thomas*, 565 U.S. 266, 283 (2012)).  "[T]he fact

that an attorney missed a filing deadline because he failed to do even

rudimentary research, is a type of "'miscalculation [that] is simply not

sufficient to warrant equitable tolling, particularly in the postconviction

context where prisoners have no constitutional right to counsel.'"  *Id*.

(quoting *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007)).  Other

circumstances that could meet the extraordinary circumstances element for

equitable tolling include "bad faith, dishonesty, divided loyalty, and mental

impairment."  *Id*. at 1236 (citing *Thomas v. Att'y Gen.*, 795 F.3d 1286,

1292-94 (11th Cir. 2015)).

In this case, the Court construes Petitioner's argument as alleging

abandonment by counsel with respect to filing a state postconviction

motion that would have tolled the federal limitations period if filed before

January 31, 2012.  *See* ECF No. 33 (alleging that Davis "abandoned"

Petitioner, lied to him, misinformed him as to the rules and procedures of

the court, and disrespected Petitioner and his family).  In this context,

"[a]bandonment denotes renunciation or withdrawal, or a rejection or

desertion of one's responsibilities, a walking away from a relationship."

*Cadet*, 853 F.3d at 1234 (citing <u>Black's Law Dictionary</u> (6th ed. 1990)).

In opposition to the motion to dismiss, Petitioner referenced letters that he sent to Davis and letters received from Davis allegedly documenting the events described in the Bar complaint. ECF No. 24 at 7-8. Petitioner stated that his mother made approximately 36 phone calls to Davis' office and made substantial payments to Davis to secure his postconviction services. *Id*. at 7. Although Petitioner was afforded an opportunity to submit the documents that he referenced, the documents he has now submitted do not support these assertions. *See* ECF No. 32.

The exhibits submitted by Petitioner do not reflect that Davis abandoned Petitioner with respect to his responsibilities regarding the federal habeas deadline. While Davis and/or his associate Tucker incorrectly determined that the federal limitations period expired in November 2011, Petitioner's exhibits show that Davis stated he would *not* be filing a state postconviction motion for purposes of tolling the federal limitations period, whether such period elapsed in November 2011 (as Davis erroneously determined) or whether such period elapsed at the end of January 2012. Rather, Davis informed Petitioner as early as October

24, 2011, only that he would file a state postconviction motion by the November 2012 state deadline. ECF No. 32 at 39. Contrary to Petitioner's assertion in his opposition to the motion to dismiss, there are no exhibits corroborating his claim that he sent Davis "numerous correspondences . . . all stating that the 3.850 motion must be filed by the 1 year AEDPA deadline." ECF No. 24 at 2. There is nothing in the record that would support a conclusion that Davis misled Petitioner in any way regarding the scope and timing of his representation, or that any actual abandonment by Davis, as opposed to an erroneous determination of the filing deadline, caused Petitioner's federal habeas corpus petition to be untimely. Under these circumstances, the Court concludes that Petitioner has not met his burden of showing that he is entitled to equitable tolling of the limitations period. Alternatively, as discussed below, it is clear from the record that Petitioner is not entitled to relief on the merits of his petition.

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow, ___ U.S. ___,* 2013 WL 5904117, *4 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of

federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification

---

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

that there was an error . . . beyond any possibility for fairminded

disagreement.'"   *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131

S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it

is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct.

at 786).  "We will not lightly conclude that a State's criminal justice system

has experienced the 'extreme malfunction' for which federal habeas relief

is the remedy."  *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### *Claim 1: Counsel's failure to investigate competency*

Petitioner contends that prior to trial he was told by a mental health

professional that his anxiety disorder and prescription drug use may have

affected his judgment on the night of the offense, and that counsel never

investigated this possible defense even after Petitioner informed him of the

advice.  Petitioner also contends that his mental condition could have been

a mitigating factor at sentencing.  ECF No. 7 at 5-6.

In rejecting this claim on postconviction review, the state court found

that the claim was facially insufficient because Petitioner did not allege that

he was, in fact, incompetent at the time of trial.  The court also reviewed

Petitioner's trial testimony, which did not reflect that Petitioner was unable

to consult with his attorney or lacked understanding of the proceeding.

Because the trial record demonstrated Petitioner's competency, the court

found that counsel was not deficient for failing to request a competency

evaluation.  The court also rejected Petitioner's assertion that his

prescription drug use may have rendered him insane during the crime,

because under state law an insanity defense cannot be predicated on the

effects of voluntary drug ingestion and an insanity defense would have

been at odds with the defense theory of self-defense.  ECF No. 17-7 at

124-27.

Although Petitioner reasserts essentially the same claims in his

federal habeas petition that he made in his Rule 3.850 motion, he points to

no clear and convincing evidence that rebuts the presumption of

correctness that is afforded to the state court's factual findings.  *See* 28

U.S.C. § 2254(e)(1).  He likewise points to no authority that would support

a conclusion that the state court's legal conclusions were contrary to, or an

unreasonable application of, clearly established federal law, including

*Strickland.   See* 28 U.S.C. § 2254(d)(1).  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### Claim Two: Counsel's Failure to Move for Immunity Hearing

Petitioner contends that his trial counsel was ineffective for failing to move for a pre-trial immunity hearing under the state's "stand your ground" law.  ECF No. 7 at 7-9.

The state court noted that "immunity from prosecution is not appropriate when competent, substantial evidence exists that a defendant was *not* acting in self-defense."  ECF No. 17-7 at 127-28 (citing *Dennis v. State*, 51 So.3rd 456, 462 (Fla. 2010)).  The court observed that in Petitioner's case the State had three "disinterested eyewitnesses" whose testimony regarding the events contradicted "wildly" from that of Petitioner and a defense witness.  One State witness testified that the victim had his hands up, as if to surrender, when Petitioner shot him.  The state court concluded that a motion under the "stand your ground" law would not have

been successful, and counsel was not deficient for failing to file such a motion.  ECF No. 17-7 at 127-28.

This court defers to the state court's interpretation of state law. Further, Petitioner points to no evidence in the record that rebuts the presumption of correctness that is afforded to the state court's factual findings, but rather makes the self-serving assertion that the State's witnesses were "liars".  On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

**Claim Three: Failure to develop a theory for "duress and necessity"**

Petitioner argues that he spoke with counsel numerous times about the elements of a duress and necessity defense, and counsel refused to request an instruction.  ECF No. 7 at 10.  The state court observed that Petitioner's postconviction motion on this point was not a "model of clarity" and construed it as a claim that trial counsel should have objected to the jury instruction on the "forcible felony exception" to the doctrine of self-defense.  Under state law, the defense of self-defense is not available to

someone who "is attempting to commit, committing, or escaping after the commission of, a forcible felony." The state court rejected this claim because that instruction was not given in Petitioner's trial. ECF No. 17-7 at 128.

Petitioner's claim that counsel could have developed a "duress and necessity" defense is wholly speculative and conclusional. Such conclusional assertions do not provide a basis for habeas corpus relief. Further, under Florida law a person claiming the defense "must show that the coercion was continuous, and that he *had no reasonable opportunity to escape the compulsion without committing the crime." Gahley v. State,* 567 So.2d 456, 459 (Fla. 1st DCA 1990) (emphasis added). Given the circumstances of the crime—which as the state court noted occurred outside of the bar— and eyewitness testimony that the victim had his hands up at the time of the shooting, the Court concludes that Petitioner has not shown that counsel's failure to pursue a duress and necessity defense amounts to deficient performance. He has also failed to show, under *Strickland's* prejudice prong, that there is a reasonable probability of a different outcome had counsel pursued the defense. Petitioner has failed

to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

**Claim Four: Failure to file a motion for change of venue**

Petitioner contends that his trial counsel was deficient for failing to move for a change of venue.  Petitioner contends that he was threatened by the victim's friends, some of whom "rushed past courthouse metal detectors and ran into courtroom threatening to kill petitioner" and his counsel at a pretrial hearing.  He alleges that pre-trial publicity tainted the jury pool and prejudiced his trial.   ECF No. 7 at 13-14.

The state court rejected this claim as both facially insufficient and without merit.  The court noted that in order to establish prejudice on such a claim, Petitioner must "bring forth evidence demonstrating that the trial court would have, or at least should have granted a motion for change of venue[.]" ECF No. 17-7 at 129 (quoting *Dillbeck v. State*, 964 So. 2d 95, 104-05 (Fla. 2007)).  Petitioner failed to allege that any jurors were actually biased, and alleged that he had discussed such a motion with counsel and counsel concluded in his professional judgment that a change of venue was unnecessary.  The court also reviewed the transcript of the voir dire

and determined that "it is apparent that there was not a problem with impartiality among the jurors due to publicity of the case or that otherwise would have made a change of venue appropriate." The court therefore concluded that counsel was not deficient. *Id*. at 129-30.

Petitioner reasserts his claims before the state court, but points to no clear and convincing evidence that rebuts the presumption of correctness that is afforded to the state court's factual findings regarding the lack of jury bias in the record. *See* 28 U.S.C. § 2254(e)(1). He likewise points to no authority that would support a conclusion that the state court's legal conclusions were contrary to, or an unreasonable application of, clearly established federal law, including *Strickland*. *See* 28 U.S.C. § 2254(d)(1). On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### Claim Five: Failure to object to Brady violation

Petitioner contends that his trial counsel failed to compel the preservation of videotape from the bar and video from the Escambia County Courthouse showing the victim's associates rushing past metal

detectors and threatening to "shoot the place up." He also contends that

counsel failed to call two detectives to testify, one of whom stated that she

believed Petitioner acted in self-defense.  Petitioner alleges that two other

unidentified witnesses were not called.  ECF No. 7 at 16.

Petitioner did not raise this claim as an ineffective-assistance claim in

state court.  *See* ECF No. 7 at 112-13.  The state court rejected it as a

*Brady* claim because it was not cognizable on postconviction review.  ECF

No. 17-7 at 130.

Because Petitioner failed to raise this claim as one of ineffective

assistance in his Rule 3.850 motion, it is procedurally defaulted and

foreclosed from federal review.  Petitioner makes no argument of cause-

and-prejudice for the procedural default.  Moreover, his claims are wholly

speculative and conclusional.  He points to nothing in the record

suggesting that such videotapes exist.  In addition, in the habeas corpus

context, "[c]omplaints concerning uncalled witnesses impose a heavy

showing since the presentation of testimonial evidence is a matter of trial

strategy and often allegations of what a witness would have testified to are

largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir.

1980).  In view of the procedural default and the speculative and

conclusional nature of this claim, the Court concludes that no basis for federal habeas relief is presented.

### Claim Six: Failure to communicate plea offer and explain penalties

Petitioner claims that his trial counsel never communicated a plea offer and failed to properly advise him of the penalties he faced if convicted at trial. Petitioner states that "as far as [he] was concerned, manslaughter carried a maximum of 15 years." Petitioner claims his counsel told him he would not receive more than 10 years. ECF No. 7 at 18.

The state court rejected this claim because there was no evidence that any plea offer existed. Further, the state court determined that Petitioner had failed to demonstrate any prejudice by counsel's performance, even if deficient, because there was no evidence that the state would have agreed to offer a negotiated plea or that counsel promised Petitioner a particular sentence if he was convicted as charged. Petitioner did not allege that he would have opted to enter a "straight up" plea if he had been correctly advised of the maximum sentence, and the court found that such a claim would not have been credible because he faced a life sentence under the original charge. ECF No. 17-7 at 131.

In this court, Petitioner also points to nothing in the record suggesting

that the State made any plea offer, and thus the Court concludes that counsel was not ineffective with respect to a plea offer.

Further, a review of the state court docket reflects that Petitioner was informed by counsel that he faced a life sentence for the charged offense of second degree murder. Petitioner sought to have a *Nelson* hearing in the state court, and in one of his letters to the court addressing his counsel's performance, Petitioner stated that his counsel discussed the possibility of taking a plea to 15 years. Petitioner stated that after hearing Petitioner's side of the story, his counsel stated "that he believed me, but 15 years was better than a life sentence," a response which apparently displeased Petitioner. ECF No. 17-1 at 18.

This letter refutes Petitioner's claim that he was uninformed about the maximum sentence that he faced or that counsel suggested he would receive no more than a 10-year sentence. It also refutes his suggestion that he would have accepted a plea offer.

On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt,* 134 U.S. at 15.

### *Claim Seven: Failure to develop a "coherent theory of JOA"*

Petitioner contends that his counsel performed deficiently in arguing his *pro forma* motion for a judgment of acquittal at the close of all of the evidence.  Specifically, Petitioner contends that his counsel should have argued that the victim and his associates were angry and screaming before Petitioner shot the victim.  ECF No. 7 at 19-20.

The state court rejected this claim because there was conflicting evidence in support of the State's case and the affirmative defense presented by Petitioner's counsel, requiring a jury to weigh the evidence and assess the witnesses' credibility.  The court determined that a differently-worded motion would not have been successful in view of the evidence presented.  ECF No. 132.

In this case, the trial record plainly establishes the existence of conflicts in the evidence, and Petitioner acknowledges as much in his petition in this Court.  The State's theory and the defense's theory were at odds in many respects, and presented conflicts that could only be resolved by the jury.  Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"

*Burt,* 134 U.S. at 15.

### *Claim Eight: Counsel's failure to object to hearsay*

Petitioner contends that his trial counsel failed to object to hearsay testimony by Jessica Lord, a bartender present on the night of the shooting. Petitioner contends that Lord testified that the victim was a regular bar patron who had been banned from the premises but then subsequently allowed to return. Petitioner argues that Lord should have been precluded from testifying that the victim was allowed to return to the bar, which then would have allowed defense counsel to attack the victim's reputation as an aggressive person. ECF No. 7 at 21-22.

The state court concluded that this claim was "incoherent" and facially insufficient. The court observed that evidence that the victim had been banned from the bar previously indicated that he had been in trouble at the bar, which was favorable to Petitioner's defense that the victim was the aggressor. The court found that Petitioner was not entitled to relief. ECF No. 17-7 at 133.

The state court's conclusion is not lacking in justification. Because the evidence arguably was helpful to Petitioner's defense, it could be a reasonable strategic decision not to interpose a hearsay objection to the

testimony.  Petitioner has failed to show either deficient performance or prejudice in connection with the claim, and he is therefore not entitled to habeas corpus relief.

### Claim Nine: Appellate counsel's failure to appeal sentence

Petitioner contends that his appellate counsel was ineffective for failing to appeal his sentence, which was based on a scoresheet that included gun and marijuana charges.  Petitioner contends that his sentencing score was calculated incorrectly and that a sentence enhancement is not reflected in his paperwork.  ECF No. 7 at 24.

Although Petitioner attempts to raise this as an ineffective-assistance claim, the substance of his claim is a challenge to his state sentence. Petitioner's claim is a state law claim challenging the application of state sentencing laws; and therefore the claim is not cognizable on federal habeas review.  A habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution.  *Engle v. Isaac*, 456 U.S. 107, 120-21, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989).  A federal writ of habeas corpus is only available in cases of federal constitutional error. *See*

*Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir.1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir.1990). Despite Petitioner's conclusional assertion that his sentence violated federal due process, Petitioner's claim is not cognizable on federal habeas corpus review because he makes no showing of a federal constitutional violation. *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, ___ U.S. ___, 131 S.Ct. 859, 861 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle,* 502 U.S. at 67 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

**Claims Ten, Eleven, and Twelve: Failure to raise issues on appeal**

Petitioner contends that his appellate counsel was ineffective for failing to raise additional issues on appeal including: (1) the manner in which the trial judge directed the bailiff to give additional jury instructions to the jury; (2) denial of a mistrial regarding misleading jury instructions; and (3) the trial court's failure to grant Petitioner's *pro se* motion for a mistrial.

ECF No. 7 at 27-29.

To prevail on these claims, Petitioner must first show that appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting a particular argument. *Smith*, 528 U.S. at 285-86 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")). In assessing appellate counsel's performance, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941F.2d 1126, 1130 (11th Cir. 1991). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Id*. at 1131. When appellate counsel reviews the entire record, thinks about various claims, and then chooses to pursue only certain issues on appeal, counsel has not rendered ineffective assistance. *Id*. Although a non-appealed issue might have been successful if it had been raised, appellate

advocacy must be "judged in its entirety." *Id*.

To determine prejudice in the context of appellate counsel's

effectiveness, the Court must review the merits of the neglected claim or

claims. *Heath*, 941 F.2d at 1132. Failure to raise a claim will not be found

prejudicial unless the claim would have a reasonable probability of success

on appeal. *Id*.

Regarding Claim Ten, immediately after the jury retired to deliberate

Petitioner's counsel raised an issue with the court regarding a correction to

the jury instructions that the court announced to the jury, but that was not

reflected on the printed copies of the instructions given to the jurors. The

State also pointed out two other errors. *See* ECF No. 17-2 at 244. The

court instructed the bailiff to retrieve the instructions from the jurors. When

the court reviewed the instructions, it was determined that the jury had

penciled in the appropriate corrections. *Id*. at 245.

Petitioner claims that the court "fundamentally erred" in various ways,

including by not ensuring his presence when the instructions were

corrected. Petitioner has failed to show that this claim has any merit or

that it would have had any reasonable probability of success on appeal

such that he was prejudiced by appellate counsel's failure to raise it. The state court's rejection of this claim was not contrary to, or an unreasonable application of, federal law.

In Claim Eleven, Petitioner argues that appellate counsel should have appealed the trial court's denial of a mistrial regarding the jury instructions. After the jury retired, Petitioner's counsel argued that there was a conflict in the jury instructions on self-defense and the new "no retreat" (a/k/a "stand your ground") law. The court instructed the jury on an exception to self-defense that applies when the defendant provoked the use of force against himself. The court found that the instruction and the "no retreat" instruction, read in their entirety, made sense. *See* ECF No. 17-2 at 243. Petitioner's counsel moved for a mistrial, which was denied. *Id*.

Petitioner's claim is refuted by the record. The sole issue raised on appeal concerned the asserted conflict in the jury instructions on self-defense and "no retreat". ECF No. 17-2 at 305 to 17-3 at 4. While appellate counsel did not specifically appeal the trial court's denial of the motion for mistrial, counsel did appeal the trial court's denial of counsel's

objections to the instructions. The state court's rejection of this ineffective-assistance claim was not contrary to, or an unreasonable application of, federal law.

In his twelfth claim, Petitioner argues that appellate counsel should have raised on appeal the trial court's denial of Petitioner's *pro se* motion for a mistrial. ECF No. 7 at 29-30. Petitioner's *pro se* motion was filed after he was convicted, and asserted various complaints regarding the trial proceedings and his counsel's performance. ECF No. 17-1 at 49-51. The state court struck the filing as a nullity because at the time it was filed Petitioner was represented by court-appointed counsel. *Id*. at 53. Petitioner has no constitutional right to represent himself while he is represented by counsel. His appellate counsel's failure to raise this as an issue for appeal presents no basis for federal habeas corpus relief.

### Claim Thirteen: Cumulative Error

Petitioner contends that the cumulative effect of trial and appellate counsel's errors amounted to a "complete breakdown in the trial process." ECF No. 7 at 31-32.

Initially, it does not appeal that this claim was raised in state court

and therefore it is procedurally defaulted and foreclosed from federal review.  Further, in rejecting a similar "cumulative error" argument made by a § 2254 petitioner, the Eleventh Circuit has stated, "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x. 560, 564 (11th Cir. 2009) (*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564–65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

Petitioner has not demonstrated any of his counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate. Petitioner was not denied effective

assistance of counsel, and he has not demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30–*31 (N.D. Fla. Sept. 30, 2009) ("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").

## V.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S.

473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

Accordingly, it is respectfully **RECOMMENDED:**

1. The Motion to Dismiss for Writ of Habeas Corpus, ECF No. 16, should be **GRANTED,** and alternatively the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 7, should be **DENIED** on the merits.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 22nd day of May 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.